PETITION FOR RE-HEARING.
Thomas B. Monroe,

of counsel for the plaintiff in error, filed the following petition for a re-hearing:

It is presumed the court has, from some cause, misapprehended this case.
Durrett declared against Neal, in covenant broken, in these words :
“ William Durrett complains of Lewis Neal in custody, &c. of a plea of covenant broken ; for that, whereas, on the 1st day of May, 1824, at the circuit aforesaid, the said defendant, by his certain writing obligatory, signed with his own proper hand, and now here to the court shewn, the date whereof is the day and year aforesaid, bound himself to pay I. Henderson $100, in notes on the Bank of the Commonwealth of Kentucky, in twelve months then next ensuing the date of said obligation ; which obligation, on the 25th July, 1824, at the circuit aforesaid, then being unpaid, the said Henderson assigned *102 to John Cowan, who afterwards, to wit, on the-day of--, in the year-, at the county and circuit aforesaid, assigned the same, it being then unpaid, to the plaintiff, of which several assignments the defendant had full and sufficient knowledge, at the times and places they were respectively made; yet the plaintiff avers, that the defendant has not kept his covenant, but the same has broken in this, that he failed to pay the plaintiff the said sum of $100, in notes on the Bank of the Commonwealth, in twelve months after the 1st day of May, 1824, agreeably to his undertaking, although thereunto after requested ; but the same to pay, hath hitherto failed and refused, and still doth fail and refuse q whereby the plaintiff hath sustained $200 damages, for which he sues,” &c.
Petition for a re-hearing.
Neal was summoned, but not appearing, a judgment was taken against him by default; and a writ of enquiry of damages being awarded, the jury, on the 1 Stli March, 1825, assessed the damages to the sum of $105, equal to the principal and interest, casting off the few odd days, which would not have amounted to twenty five cents,) and for this sum judgment was rendered in lawful money, and costs.
Neal prosecutes his writ of error in this court ; and assigns for error—
1. That the declaration is insufficient.
2. That the damages assessed by thejury,^and for which the judgment is rendered, is excessive.
The court have said—
“ Justice has been done, and no principle violated; wherefore, the judgment is affirmed.”
It is not proposed to re-examine the declaration. I have set it out at full length ; if it be good, let it Stand for-a precedent. But on the other error, it is confidently believed, the judgment would have been reversed, and the cause remanded for a new trial, in which Neal might be enabled to shew, he did not oice one, cent of this demand.
The declaration was not endorsed, that banknotes would be received for the demand ; and the judg *103 ment is for lawful money of the U. States; and, therefore, the amount of verdict and judgment oughtnot to have exceeded the value of the notes on the Bank of the Commonwealth, on the 1st day of May, 1825, with interest up to the 13th March, 1826. On the 1st May, 1825, the Bank notes were worth just fifty cents per dollar; so that the ariiount of the plaintiff’s damage was fifty dollars on the day of the breach of the covenant, on which the interest for ten months, (odd days cast off,) was two dollars and fifty cents; and the plaintiff was, consequently, entitled to recover $52 50 cents, exactly half the sum which was in fact recovered.
Petition fora re-bearing.
This is the manifest error complained of — that the damages are double. Neal appears to have lost exactly as much by the excessive damages, as Durrett would have lost had he failed to recover at all, if the half, erroneously added, be equal to the half that might have been legally recovered.
The court cannot know that Durrett did cause his execution of this judgment to be endorsed, that the bank notes would be received, for several reasons. First, because, if there are such writings, ex-cutions, endorsements and sheriff’s returns thereon, found in the transcript, they are no part of the record, and cannot be noticed. This is directly proved by the case of Shield’s heirs against Butts, J. J. Marshall’s Rep.--, and the order book, page--, in which this court were so clearly of opinion that the executions .and other such proceedings, subsequent to judgment, were no part of the record of the case brought up here by a writ of error to the judgment, that the court did unanimously condemn the record because it contained the executions. That record was made by the same clerk who made the present transcript. It would be hard for my client to lose his cause because his transcript contains the same improper matter which lost the same clerk the price of the record in Shield’s case.
Second. The record required by the writ of error, does not extend beyond the judgment; and the court has no assurance that the record is complete farther than that — therefore, the court does not know but the executions and returns, found in the *104 transcript, were all quashed, and the specie collected; or it may yet remain due.
Petition for a re-hearing.
But I care not how this may be. The law is, that the endorsement on the execution did not cure the error in the judgment. If I recover horned cattle, when I ought to have recovered horses, I cannot cure the error by endorsing. I will receive the horses on the execution. If I recover double the sum Í am entitled to, I cannot cure the error by saying on my execution, I will receive depreciated bank notes, or one half the sum.
It would be idle to reason on this matter. No law is plainer. And if any law be obligatory, this must be; and to' disregard it, must violate principle. And courts of iaw can have no rules to administer justice upon but rules of the law. When cases are decided by any other rule than the law of the land, a greater injustice is done than the parties to the controversy can suffer. The principles of the government are violated, and injustice is done the constition of the republic ; and the adjudged amount is of no consequence. But suppose we confine the matter to the individual case. It is neither just or lawful that the creditor should have an appreciation of 50 per cent, on the paper, and 6 per cent, on the amount.
It has been so often held, and in such solemn terms, by this court, that it was bound to take judicial notice of the depreciation of the notes on the Bank of the Commonwealth, that I had supposed it was settled for law.
There is some intimation in the opinion of the court on the petition for the re-hearing in the case of Moore and Sharp, that it could not know exactly the depreciation at any certain time ; and something was said, in delivering the opinion in this case, about the fraction the damages assessed lacked of the full amount of the principal and interest.
But, to use the language of the court in the above cited opinion, “ if the court know anything about Commonwealth’s paper,” they must know, that in 1825, when the covenant fell due, it was worth but a half of its nominal amount, and that it never was, *105 -at anv time before this judgment was rendered, wbbin ten per cent, of its nominal value, much less within one fifth of one per ct. of its nominal amount. If we know anything, we know that the people of Kentucky never count a fifth of one per cent, off currency, and that in such cases a« the present, nothing is move common than to cast off the odd days and cents.
Response.
No necessity to aver nonpayment to assignor when it is averred that the obligation was unpaid at the • ime of atMgnment and that obligor at that time hai' notice of the assignment.
*105 In short, the court knows that the twenty one cents, which the verdict and judgment in this case lacks of the full amount of the Bank paper, valued as gold and silver, with the interest on it, was not the result of a deduction for the denreciation'of the paper, tone fifth of one per cent, ! H hut was the consequence of the exclusion of the few odd days in March. And it is impossible for us to w"inkso hard as to he blind to the fact.
It can never bp believed that, this court reversed the six cases of Moore and Sharp hv which my client lost about $100 and costs, because the Bank paper was not scaled, when it was not known that the depreciation exceeded one fifth of one per cent,, or ten cents in all the cases.
» The court did not interfere in those cases, because the judgments mav have bpen. each of them, ten cents too high, and it cannot be necessary to press this matter in this point of view.
If I know anything ahout this judicial knowledge, I must, know hoth injustice has been done and principle violated in this case.